UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMIE EARL STEPHEN,<br><br>    Petitioner,<br><br>    v.<br><br>R. DAVIS,<br><br>    Respondent. | Case No. 15-cv-01288-SI (pr)<br><br>**ORDER OF DISMISSAL**<br>Re: Dkt. No. 8 |

### INTRODUCTION

Jimmie Stephen, a prisoner formerly incarcerated at San Quentin State Prison and now at the California Medical Facility in Vacaville, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge a disciplinary decision. Respondent has moved to dismiss the action for lack of habeas jurisdiction and for mootness. Plaintiff filed a statement of non-objection to a dismissal without prejudice. For the reasons discussed below, the court will dismiss the action for lack of habeas jurisdiction.

### BACKGROUND

A rule violation report was issued on November 6, 2014, charging Stephen with "possession of a controlled substance (THC)" based upon the discovery of marijuana in his cell during a search on October 3, 2014. Dkt. No. 8-1 at 18. A disciplinary hearing was held on December 15, 2014, at which Stephen was found guilty and assessed a 150-day loss of good conduct time credits. *Id.* at 20-21. Stephen filed an inmate appeal about the disciplinary hearing and prevailed; the associate warden vacated the disciplinary hearing and ordered the rule violation report re-issued and a new hearing held on the charge. *Id.* at 25. A new disciplinary hearing was

1 held on February 17, 2015, at which Stephen again was found guilty of possession of a controlled
2 substance and was assessed a 150-day loss of good conduct time credits. *Id.* at 25-34.

3 In his federal petition for writ of habeas corpus, Stephen alleged that he filed an unsuccessful challenge to the disciplinary decision in the California Supreme Court in 2015 before filing his federal petition. This court construed the federal petition to assert a due process claim based on the denial of a staff assistant and the failure to call a witness at the disciplinary hearing.

Stephen is currently incarcerated serving a sentence of 35 years to life in prison. Dkt. No. 8-1 at 2. That sentence was imposed in 1991, after he was convicted of second degree murder and sentence enhancement allegations were found true. *See id.* He has not been found suitable for parole. *See id.* at 7, 14.

## DISCUSSION

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Habeas jurisdiction is an "implicit exception" from the "otherwise broad scope" of 42 U.S.C. § 1983.[1] *Nettles v. Grounds*, 788 F.3d 992, 999 (9th Cir. 2015) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005)).

*Nettles* attempted to resolve some ambiguities as to when claims must be brought in a habeas action under 28 U.S.C. § 2254 and when claims must be brought in a civil rights action under 42 U.S.C. § 1983. "[R]elief is available to a prisoner under the federal habeas statute only if success on the claim would 'necessarily spell speedier release' from custody, which *Skinner* suggested would include termination of custody, acceleration of the future date of release from custody, or reduction of the level of custody." *Nettles*, 788 F.3d at 1001 (citing *Skinner v. Switzer*, 562 U.S. 521, 533-34 & n.13 (2011)). Earlier Ninth Circuit cases indicating "that the writ of

---

[1] "Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

2

habeas corpus may extend to claims that, if successful, would merely be likely to or have the potential to lead to a speedier release" were "superceded by the Supreme Court's rulings." *Id*. *Nettles* stands for the proposition that, to be cognizable in habeas, a claim has to necessarily accelerate release – not just likely or merely potentially accelerate release – from confinement if successful. *See id*. at 1000-01.

*Nettles* applied its necessarily-spells-speedier-release rule to an indeterminately-sentenced life prisoner who sought restoration of 30 days of lost time credits and expungement of the rule violation report that led to the loss of time credits. *See id*. at 1002. *Nettles* determined that habeas jurisdiction was not established because neither form of relief would necessarily accelerate the prisoner's release from prison, or terminate his custody, or reduce his level of custody. *See id*. at 1002-04. Significantly, one could not determine that the restoration of time credits would necessarily affect the duration of the prisoner's confinement because the prisoner had not yet been found suitable for parole and it was unknown what his term would be if he was at some future date found suitable for parole. *Id*. at 1003. "Without knowing how many years Nettles will serve before the Board finds him suitable for parole or the length of his base term, we cannot conclude that restoration of the lost good-time credits would necessarily affect the duration of Nettles's confinement if and when the Board finds him suitable for parole." *Id*. at 1004. The court also rejected the argument that habeas jurisdiction existed because the expungement of the rule violation report would remove "roadblocks to parole" suitability; although the rule violation report "will likely have some effect on the Board's consideration, there is no basis for concluding that the expungement of this report from the record will 'necessarily spell speeder release'" or reduce his level of custody. *Id.* at 1003.[2]

---

[2] *Nettles* also considered the case of a prisoner who was attempting to challenge a gang validation decision and concluded that challenge could go forward in a habeas action. This was so because the Ninth Circuit panel in *Nettles* was "bound by the determination" of an earlier panel in *Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir 1989), that "a prisoner can seek expungement of an incident from his disciplinary record when that would lead to speedier release from disciplinary segregation." *Nettles*, 998 F.3d at 1005. *Bostic* had held that "[h]abeas corpus jurisdiction is also available for a prisoner's claims that he has been subjected to greater restrictions of his liberty, such as disciplinary segregation, without due process of law." *Bostic*, 884 F.2d at 1269. This portion of *Nettles* is not relevant to Stephen's case, because it does not appear that he currently is in disciplinary segregation or otherwise subjected to a greater restriction of his liberty as a result of

Turning to the case at hand, the 150-day loss of credits imposed on Stephen in the disciplinary decision will not necessarily affect the duration of his confinement. Stephen is in the same situation as the *Nettles* plaintiff: he is an indeterminately sentenced prisoner not yet found suitable for parole and for whom a base term has not yet been set. It cannot be said that the removal of the rule violation report or the restoration of time credits will necessarily result in an earlier release date for Stephen. Habeas jurisdiction therefore is absent under the reasoning of *Nettles. Accord Hardney v. Virga*, 2015 WL 3648697 (E. D. Cal. June 10, 2015) (applying *Nettles* and recommending dismissal of habeas petition from life inmate challenging a loss of credits).

In theory, it should be possible for Stephen to file a civil rights action to challenge the prison disciplinary decision. There are some obstacles to such an action, which he should bear in mind in determining whether to spend the money to file a new civil rights action. First, efforts to exhaust state court remedies may preclude a prisoner from litigating the same claims in a civil rights action because state habeas proceedings can have issue or claim preclusive effects on later civil rights actions under 42 U.S.C. § 1983 actions under certain circumstances. *See Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1347 (9th Cir. 1981) (state habeas proceeding precludes identical issue from being relitigated in subsequent § 1983 action if state habeas court afforded full and fair opportunity for issue to be heard); *Gonzalez v. CDC*, 739 F.3d 1226, 1230 (9th Cir. 2014) (extending rule of *Silverton* to cover claim preclusion as well as issue preclusion). Second, Stephen almost certainly will have to pay the full $400.00 fee ($350.00 filing fee plus $50.00 administrative fee) if he files a civil rights action to challenge the disciplinary decision because he is subject to 28 U.S.C. § 1915(g)'s restriction on filings by prisoners who have had three or more prior cases dismissed on the grounds that they were malicious, frivolous, or failed to state a claim.

Although a district court may construe a habeas petition by a prisoner attacking the conditions of his confinement as pleading civil rights claims under 42 U.S.C. § 1983, *Wilwording v. Swenson*, 404 U.S. 249, 251 (1971), the court declines to do so here. The difficulty with construing a habeas petition as a civil rights complaint is that the two forms used by most

---

the disciplinary decision.

4

prisoners request different information and much of the information necessary for a civil rights complaint is not included in the habeas petition filed here. Examples of the potential problems created by using the habeas petition form rather than the civil rights complaint form include the potential omission of intended defendants, potential failure to link each defendant to the claims, and potential absence of an adequate prayer for relief. Additionally, there is doubt whether the prisoner is willing to pay the civil action filing fee of $ 350.00 (plus a $50.00 administrative fee) rather than the $5.00 habeas filing fee to pursue his claims. The habeas versus civil rights distinction is not just a matter of using different pleading forms. A habeas action differs in many ways from a civil rights action: (1) a habeas petitioner has no right to a jury trial on his claims, (2) the court may be able to make credibility determinations based on the written submissions of the parties in a habeas action, (3) state court (rather than administrative) remedies must be exhausted for the claims in a habeas action, (4) the proper respondent in a habeas action is the warden in charge of the prison, but he or she might not be able to provide the desired relief when the prisoner is complaining about a condition of confinement, and (5) damages cannot be awarded in a habeas action. While a prisoner may think he has found a loophole that allows him to save hundreds of dollars – by filing a habeas petition with a $5.00 fee rather than the usual $350.00 filing fee (plus $50.00 administrative fee) for a civil action – the loophole proves unhelpful because he ultimately cannot proceed in habeas and will be charged the regular civil action filing fee to challenge conditions of confinement. It is not in the interest of judicial economy to allow prisoners to file civil rights actions on habeas forms because virtually every such case, including this one, will be defective and require additional court resources to deal with the problems created by the different filing fees and the absence of information on the habeas form.

Finally, Stephen's non-objection to respondent's motion asked that this action be dismissed without prejudice due to non-exhaustion of administrative remedies under *Ngo v. Woodford*, 548 U.S 81 (2006). Stephen may be confusing exhaustion of administrative and judicial remedies, or perhaps confusing requirements for habeas and civil rights actions. Although this action is being dismissed, the dismissal is not pursuant to *Ngo*. *Ngo* does not concern exhaustion of judicial remedies and does not apply to a habeas action. Instead, *Ngo* pertains to the

1 requirement in 42 U.S.C. § 1997e that administrative remedies be exhausted before a civil rights
2 action is filed under 42 U.S.C. § 1983.  If Stephen chooses to file a civil rights action, he must
3 exhaust *administrative* remedies before filing that civil rights action.

## CONCLUSION

For the foregoing reasons, respondent's motion to dismiss is GRANTED. Dkt. No. 8. This action for a writ of habeas corpus is DISMISSED for lack of jurisdiction. The dismissal is without prejudice to petitioner filing a civil rights action under 42 U.S.C. § 1983, preferably using the court's civil rights complaint form.   The clerk shall close the file.

**IT IS SO ORDERED**.

Dated:  October 16, 2015

SUSAN ILLSTON
United States District Judge